**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BANK OF AMERICA, N.A., | ) |
| Plaintiff, | ) Case No.: 2:16-cv-00764-GMN-GWF |
| vs. | ) |
| | ) **ORDER** |
| AZURE MANOR/RANCHO DE PAZ HOMEOWNERS ASSOCIATION, *et al.*, | ) |
| Defendants. | ) |

Pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 63), filed by Plaintiff Bank of America, N.A. ("BANA"). Defendants Azure Manor/Rancho de Paz Homeowners Association ("HOA") and SFR Investments Pool 1, LLC ("SFR") (collectively "Defendants") filed Responses, (ECF Nos. 73, 75), and BANA filed a Reply, (ECF No. 85).

Also pending before the Court are Defendants' Motions for Summary Judgment, (ECF Nos. 64, 66), to which BANA filed Responses, (ECF Nos. 71, 72), and Defendants filed Replies, (ECF Nos. 86, 87).

For the reasons discussed below, Defendants' Motions for Summary Judgment are **GRANTED** and BANA's Motion for Partial Summary Judgment is **DENIED**.

**I.  BACKGROUND**

This case arises from the non-judicial foreclosure on real property located at 2820 Tilten Kilt Avenue, North Las Vegas, Nevada 89081 (the "Property"). (*See* Deed of Trust, Ex. A to BANA's Mot. Summ. J. ("MSJ"), ECF No. 63-1). In 2006, Charles G. Campbell ("Borrower") refinanced his purchase of the Property by way of a $323,000.00 loan secured by a deed of trust (the "DOT"). (*Id.*). BANA, as lender and beneficiary, recorded the DOT on May 8, 2007. (*Id.*).

In 2009, upon Borrower's failure to pay all amounts due, Alessi & Koenig, LLC ("A&K") initiated foreclosure proceedings on behalf of HOA by recording a notice of delinquent assessment lien. (*See* Notice of Lien, Ex. B to BANA's MSJ, ECF No. 63-2). A&K subsequently recorded a notice of default against the Property, followed by a notice of foreclosure sale. (*See* Notice of Default, Ex. C to BANA's MSJ, ECF No. 63-3); (Notice of Sale, Ex. D to BANA's MSJ, ECF No. 63-4). On August 2, 2012, A&K recorded a second notice of foreclosure sale setting a sale date for September 5, 2012. (*See* Second Notice of Sale, Ex. E to BANA's MSJ, ECF No. 63-5).

On August 31, 2012, BANA's counsel ("Miles Bauer"), in an effort to preserve BANA's DOT, sent A&K a letter requesting the amount of HOA's superpriority lien. (Accounting Request, Ex. 2 to Miles Bauer Aff., Ex. H to BANA's MSJ, ECF No. 63-8). On September 5, 2012, A&K conducted the foreclosure sale, at which the Property reverted to HOA for a credit bid of $7,695.22. (*See* Trustee's Deed Upon Sale, Ex. F. to BANA's MSJ, ECF No. 63-6). Following the sale, on September 12, 2012, A&K responded to BANA with a ledger providing the outstanding fees, interest, and costs. (A&K Ledger, Ex. E to SFR's Resp. to BANA's MSJ, ECF No. 75-5). On March 11, 2013, A&K sold the Property to SFR through a quitclaim deed. (*See* Quitclaim Deed, Ex. G to BANA's MSJ, ECF No. 63-7).

BANA filed its Complaint on April 6, 2016, asserting the following causes of action arising from the foreclosure and subsequent sales of the Property: (1) quiet title; (2) breach of NRS 116.1113; (3) wrongful foreclosure; and (4) injunctive relief. (*See* Compl. ¶¶ 26–70, ECF No. 1). SFR brings counterclaims against BANA for quiet title, injunctive relief, and slander of title, as well as crossclaims against Borrower for quiet title and injunctive relief. (*See* Answer 8:21–16:7, ECF No. 23).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and

the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

BANA moves for summary judgment on its quiet title claim on the following grounds: (1) the foreclosure sale is invalid because it was conducted under a facially unconstitutional statute; (2) BANA's offer to pay off the HOA superpriority lien constituted a valid tender such that it preserved the DOT; and (3) the Property's sale for a grossly inadequate price, coupled with other irregularities in the foreclosure process, warrant setting aside the sale on equitable grounds. (BANA's MSJ 6:1–16:20, 17:6–22:13, ECF No. 63).

SFR argues that it is entitled to summary judgment on its competing claim for quiet title because: (1) BANA's claims are time-barred; (2) *Bourne Valley*, on which BANA bases its constitutional argument, has been superseded; and (3) HOA conducted the foreclosure consistent with NRS Chapter 116 and, as a result, the sale extinguished BANA's DOT. (SFR's MSJ 7:18–22:25, ECF No. 66).[1]

HOA requests summary judgment on BANA's claims contending that: (1) the claims are barred by the applicable limitations periods; (2) BANA failed to submit its claims to Mediation, thus compelling their dismissal; (3) the sale complied with procedural due process as well as NRS Chapter 116; (4) the sale should not be equitably set aside because there is no evidence of fraud, oppression, or unfairness; and (5) BANA's quiet title claim cannot survive against HOA because HOA disclaims interest in the Property. (HOA's MSJ 5:7–22, 6:19–15:12, ECF No. 64).

The Court begins with the threshold questions of the timeliness of BANA's claims and the constitutionality of NRS Chapter 116.

### A. Statute of Limitations

According to Defendants, because BANA's claims are based upon breaches of statutory duties, particularly NRS Chapter 116, they are subject to a three-year limitations period. (SFR's MSJ 9:15–11:16); (HOA's MTD 5:6–22). Therefore, Defendants assert that BANA's failure to file this action within three years of the foreclosure sale warrants dismissal of its claims.

#### 1. Quiet Title

Courts in this District, interpreting Nevada law, have concluded that a lender's quiet title action is subject to either a four or five-year limitations period, which is triggered by the HOA foreclosure sale or its recordation. *U.S. Bank Nat'l Ass'n v. SFR Invs. Pool 1, LLC*, No. 2:16-

---

[1] SFR has not moved for summary judgment on its slander of title claim.

cv-00576-GMN-NJK, 2019 WL 303004, at *4 (D. Nev. Jan. 22, 2019); *Wilmington Tr., Nat'l Ass'n v. Royal Highlands St. & Landscape Maint. Corp.*, No. 2:18-cv-00245-JAD-PAL, 2018 WL 2741044, at *2 (D. Nev. June 6, 2018). *See also Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank*, 388 P.3d 226, 232 (Nev. 2017); *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1114 (9th Cir. 2016).

BANA's quiet title claim is timely because the April 6, 2016 Complaint was filed less than four years after the September 2012 foreclosure sale. (*See* Compl, ECF No. 1); (*see also* Trustee's Deed Upon Sale, Ex. F. to BANA's MSJ, ECF No. 63-6).

### 2. Wrongful Foreclosure and Breach of NRS 116.1113

In Nevada, claims premised upon breaches of statutory duties are generally subject to a three-year limitations period. *See* NRS 11.190(3)(a) ("An action upon a liability created by statute, other than a penalty or forfeiture" may only be commenced "[w]ithin 3 years."). BANA's allegations supporting its wrongful foreclosure and breach of NRS 116.1113 claims are expressly grounded in HOA and A&K's purported non-compliance with NRS Chapter 116. (*See* Compl. ¶¶ 47–63). Accordingly, a three-year limitations period governs these claims. *See Deutsche Bank Nat'l Tr. Co. v. Star Hill Homeowners Ass'n*, No. 2:17-cv-02536-JAD-PAL, 2018 WL 2370689, at *4 (D. Nev. May 23, 2018); *Bank of New York Mellon v. Hillcrest at Summit Hills Homeowners Ass'n*, 2:16-cv-02295-GMN-PAL, 2019 WL 415324, at *3 (D. Nev. Jan. 31, 2019). Because BANA filed this action more than three years after the HOA foreclosure sale, these claims are time-barred. HOA's Motion for Summary Judgment is therefore granted as to BANA's wrongful foreclosure and breach of NRS 116.1113 claims.

### B. Constitutionality of the Foreclosure

BANA and SFR dispute whether the Ninth Circuit's decision in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL

1300223 (U.S. June 26, 2017), compels the Court to find that BANA's DOT survived the HOA foreclosure sale. (BANA's MSJ 7:19–10:9); (SFR's MSJ 11:17–15:4).

In *Bourne Valley*, the Ninth Circuit held that NRS 116.3116's notice provisions violated lenders' due process rights because the scheme "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Bourne Valley*, 832 F.3d at 1159. The Ninth Circuit, interpreting Nevada law, declined to embrace the petitioner's argument that NRS 107.090, read into NRS 116.31168(1), mandates that HOAs provide notice to lenders even absent a request. *Id.* Accordingly, the absence of mandatory notice provisions rendered the statutory scheme facially unconstitutional. *Id.* at 1158–60.

*Bourne Valley*'s construction of Nevada law is "only binding in the absence of any subsequent indication from the [Nevada] courts that [the Ninth Circuit's] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). "[W]here the reasoning or theory of . . . prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, [a court] should consider itself bound by the later controlling authority . . . ." *Miller v. Gammie*, 335 F.3d 889, 892–893 (9th Cir. 2003). "[A][s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation.").

In *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, the Nevada Supreme Court expressly declined to follow *Bourne Valley* and held that NRS 107.090 is incorporated into NRS 116.31168, thus requiring that HOAs "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." 422 P.3d 1248, 1253 (Nev. 2018) (en banc). As this Court previously explained, the Nevada Supreme

Court's holding is clearly irreconcilable with the Ninth Circuit's finding of unconstitutionality because the Ninth Circuit premised its conclusion on NRS Chapter 116's lack of mandatory notice provisions. *See Bank of Am., N.A. v. Falcon Point Ass'n*, No. 2:16-cv-00814-GMN-CWH, 2018 WL 4682317, at *4 (D. Nev. Sept. 28, 2018). Because the Nevada Supreme Court has since interpreted NRS Chapter 116 as mandating notice, the rationale underlying the *Bourne Valley* decision no longer finds support under Nevada law. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (recognizing that cases are "clearly irreconcilable" where the "relevant court of last resort . . . undercut[s] the theory or reasoning underlying the prior circuit precedent."); *see e.g, Toghill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017).

In sum, *Bourne Valley*'s holding that NRS Chapter 116 is facially unconstitutional is clearly irreconcilable with the Nevada Supreme Court's subsequent pronouncement. Because the Nevada Supreme Court has final say on the meaning of Nevada statutes, *Bourne Valley* is no longer controlling authority with respect to NRS 116.3116's notice provisions and, consequently, its finding of facial unconstitutionality. Accordingly, to the extent BANA, in the instant Motion, seeks to prevail based upon *Bourne Valley*, the Court rejects this theory.

    **C.    Tender of the Superpriority Portion of HOA's Lien**

BANA contends that its offer to pay A&K nine months' worth of HOA common assessments constituted a valid tender such that the DOT continues to encumber the Property. (BANA's MSJ 13:4–16:20). SFR responds that BANA's purported tender is without legal effect because BANA never delivered payment to A&K or HOA. (SFR's MSJ 16:4–17:17).

Under NRS 116.3116, the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking

the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc).

BANA's letter of inquiry to A&K does not constitute a valid tender. "Valid tender requires payment in full." *Bank of Am., N.A.*, 427 P.3d at 117. A mere offer to pay in the future, without a present ability to make such payment, does not constitute a valid tender. *Id.* at 118; *Bank of Am., N.A. v. TRP Fund IV, LLC*, 422 P.3d 712 (Nev. 2018) (unpublished); *see also Southfork Invs. Grp., Inc. v. Williams*, 706 So. 2d 75, 79 (Fla. Dist. Ct. App. 1998); *McDowell Welding & Pipefitting, Inc. v. United States Gypsum Co.*, 320 P.3d 579, 585 (Or. Ct. App. 2014).

Here, BANA's letter to A&K merely requests the amount of the HOA superpriority lien and does not contain any form of payment. (*See* Accounting Request, Ex. 2 to Miles Bauer Aff., Ex. H to BANA's MSJ, ECF No. 63-8) ("It is unclear . . . what amount the nine months' of common assessments pre-dating the NOD are. That amount, whatever it is, is the amount BANA should be required to rightfully pay to discharge its obligations to HOA . . . ."). Because the letter does not communicate the present ability of immediate performance, the Court finds the purported tender is without legal effect. *See Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, No. 2:15-cv-00692-GMN-CWH, 2018 WL 4704031, at *4 (D. Nev. Sept. 29, 2018) ("Because BANA only declared its willingness to pay and did not present actual payment, there was no tender . . . ."); *Bank of New York Mellon v. S. Highlands Cmty. Ass'n*, No. 2:16-cv-1177-JCM-VCF, 2018 WL 1021333, at *6 (D. Nev. Feb. 22, 2018) (holding a lender's "letter requesting the amount for the nine-months' worth of assessments owed," standing alone, does not constitute valid tender).

BANA states that A&K's refusal to provide the amount of HOA's superpriority lien is the only reason it did not submit an actual payment. (BANA's MSJ 8:20–21). A&K's lack of

response and "refusal to cooperate," according to BANA, cannot negate BANA's attempt to pay off the superpriority lien. (*Id.* 9:5–13).

The Court, however, is unpersuaded that A&K's alleged refusal to cooperate—by not responding to BANA's accounting request—constitutes an affirmative effort to prevent BANA's tender. *Bank of Am., N.A.*, 2018 WL 4704031, at *4 ("Absent evidence that the HOA or its agent affirmatively thwarted appellants' efforts to tender the superpriority amount, the alleged futility of any such effort does not establish unfairness or oppression.") (quoting *Nationstar Mortg., LLC v. Melvin Grp., LLC*, 422 P.3d 711 (Nev. 2018) (unpublished)). A&K's failure to respond earlier to BANA's inquiry, which was mailed a week before the sale, falls short of constituting affirmative efforts to thwart BANA's payment of the superpriority lien.

### D. Equitable Grounds for Setting Aside the Sale

BANA argues the sale should be set aside on the following equitable bases: (1) the Property was sold for a grossly inadequate price; (2) HOA's CC&Rs represent that foreclosure will not disturb the first deed of trust; (3) the statutory notices failed to include the superpriority portion of HOA's lien; (4) HOA did not authorize A&K's sale; (5) the sale was the product of collusion between A&K and SFR; and (6) the legal uncertainty at the time of the sale weighs in favor of setting the sale aside on unfairness grounds. (BANA's MSJ 17:7–22:13).

In determining whether an HOA's non-judicial foreclosure sale may be set aside on equitable grounds, the relevant inquiry is "whether the sale was affected by fraud, unfairness, or oppression." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 646 (Nev. 2017). The burden of establishing that a foreclosure sale should be set aside rests with the party challenging the sale. *Id.* at 646.

### 1. Inadequate Sale Price

BANA argues the grossly inadequate sales price of the Property warrants invalidating the sale. (BANA's MSJ 17:12–19:5). According to BANA, the Property sold for $7,695.22, representing 6% of its fair market value. (*Id.* 17:13–17).

"[M]ere inadequacy of price is not in itself sufficient to set aside the foreclosure sale, but it should be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or oppression." *Shadow Canyon*, 405 P.3d at 648. Because a low sales price is insufficient as a matter of law, the Court turns to BANA's additional equitable arguments.

### 2. Mortgagee Protection Clause

BANA contends that because HOA's CC&Rs specify that foreclosure will not impact a first deed of trust, this representation is sufficient to establish unfairness. (BANA's MSJ 20:17–23). The Nevada Supreme Court, however, has repeatedly held that an HOA's CC&RS, including those that provide for mortgagee protection, do not supersede the statutory structure of NRS Chapter 116. *See SFR Invs.*, 334 P.3d at 418–19 ("'Nothing in [NRS] 116.3116 expressly provides for a waiver of the HOA's right to a priority position for the HOA's super priority lien.'. . . The mortgage savings clause thus does not affect NRS 116.3116(2)'s application in this case.") (citation omitted); *Horizon at Seven Hills v. Ikon Holdings*, 373 P.3d 66, 73–74 (Nev. 2016) (holding that an HOA's CC&Rs in contravention of NRS Chapter 116 "are superseded by statute and are thus negated."); *see also RLP-Vervain Court, LLC v. Wells Fargo*, No. 65255, 2014 WL 6889625, at *1 (Nev. Dec. 5, 2014) (declining to consider certified question of "whether an association may validly subordinate its assessment lien" in its CC&Rs because "there is controlling Nevada precedent" on point).

Additionally, other than the existence of the mortgagee protection clause, BANA has not pointed to evidence of resulting unfairness such as chilled bidding. Even if BANA were able to

show that potential bidders had notice of HOA's CC&Rs, it is "presumed that any potential bidders also were aware of NRS 116.1104." *US Bank, N.A. v. SFR Invs. Pool 1, LLC*, 414 P.3d 809 (Nev. 2018) (unpublished) (citing *Smith v. State*, 151 P. 512, 513 (Nev. 1915) ("Every one is presumed to know the law and this presumption is not even rebuttable.")). The Court accordingly rejects this argument.

### 3. Content of Notices

BANA asserts that the foreclosure sale should be set because HOA, in its foreclosure notices, failed to identify the superpriority portion of its lien. (BANA's MSJ 20:24–28). As with BANA's contentions regarding HOA's CC&Rs, this too is not enough to constitute fraud, oppression, or unfairness. The Nevada Supreme Court has expressly rejected the argument that foreclosure notices must state the superpriority portion, reasoning, in part, "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed of trust holder], so it was appropriate to state the total amount of the lien." *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc); *see also Bank of Am., N.A. v. Saticoy Bay LLC Series*, No. 2:17-cv-02808-APG-CWH, 2018 WL 3312969, at *3 (D. Nev. July 5, 2018) ("The fact that a notice does not identify a superpriority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests."). Therefore, absent other evidence of fraud, oppression, or unfairness, an HOA's failure to identify the superpriority portion of the lien is not enough, as a matter of law, to justify setting aside the sale.

### 4. Authority to Conduct Sale

According to BANA, A&K proceeded with the foreclosure sale without authority to do so from HOA. (BANA's MSJ 21:1–17). HOA, concurring with BANA, similarly contends that it did not authorize A&K to foreclose on the Property. (HOA's Resp. to BANA's MSJ 13:1–8, ECF No. 73). SFR responds that A&K possessed authority to conduct the sale because A&K

was retained for that purpose, BANA's evidence fails to contradict A&K's authority, and HOA nevertheless ratified A&K's conduct by accepting the proceeds of the foreclosure sale. (SFR's Resp. to BANA's MSJ 4:21–5:16, ECF No. 75).

The evidence BANA puts forth falls short of demonstrating A&K's lack of authority to conduct the sale. BANA selectively cites the deposition testimony of HOA's 30(b)(6) designee which does not, as BANA suggests, show that A&K sold the Property without authority. Indeed, HOA's witness testified she did not know if HOA's policy during the relevant time period required its collections agents to get permission to move forward with foreclosure sales. (*See* HOA's 30(b)(6) Dep. 25:14–20, Ex. C to SFR's Resp. to BANA's MSJ, ECF No. 75-3). The witness further testified that she could not speak to the course of dealing between HOA and A&K because she was not employed by HOA during the time period relevant to this case. (*Id.* 9:19–21, 26:19–21).

In any event, the Court finds that A&K at least had actual authority to record the initial notice of delinquent assessments lien. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act," *Simmons Self-Storage v. Rib Roof, Inc.*, 331 P.3d 850, 856 (Nev. 2014) (quoting Restatement (Third) of Agency § 2.01 (2006)). It is undisputed that HOA enlisted A&K for collections related to the Property and expected A&K, as a result, to file a notice of delinquent assessment lien. (HOA's 30(b)(6) Dep. 28:8–13). HOA and BANA have not introduced any evidence confirming HOA's limitations to A&K's authority upon A&K's initial retention.

As to A&K's subsequent notice of default and notices of foreclosure sale, the Court finds that A&K had either apparent authority or HOA ratified A&K's conduct. "Apparent authority is 'that authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the

principal from denying its existence.'" *Simmons Self-Storage*, 331 P.3d at 857 (quoting *Dixon v. Thatcher*, 742 P.3d 1029, 1031 (Nev. 1987)). "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014) (citing Restatement (Third) of Agency §§ 4.01(2)).

The record shows that HOA received A&K's statutory notices bearing HOA's identity on the letterhead and that HOA possessed all relevant account information on the Property. (HOA's 30(b)(6) Dep. 17:20–25, 27:21–28:4). Thus, HOA was at least on constructive notice of the September 5, 2012 foreclosure sale, the Property's reversion back to HOA following the sale, and SFR's subsequent purchase of the Property, for which HOA accepted a check for $3,000.22 check from A&K. (*Id.* 27:17–28:4, 37:2–7). A&K's holding itself out as agent to HOA and HOA's subsequent retention of benefits associated with that purported agency relationship leads the Court to conclude that A&K possessed authority to conduct the sale.

BANA also points to A&K's 30(b)(6) witness's deposition which BANA suggests shows that A&K did not have authority to proceed with a sale. In the transcript, A&K agrees with the statement that "seven different entries . . . state that the trustee's sale was not authorized." (A&K 30(b)(6) Dep. 36:3–7, Ex. M to BANA's MSJ, ECF No. 63-13). The Court is unpersuaded that this testimony changes the result.

First, BANA's decision to include a single substantive page of the transcript leaves the Court without context to discern what entries the questioner is referring to, when A&K received these entries, or other details that would render this evidence meaningful. Even assuming, *arguendo*, that A&K believed it was without authority based upon manifestations from HOA, this would not defeat apparent authority, which focuses upon a *third party's* reasonable belief. *See Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 261 (Nev. 1997) (explaining that apparent authority occurs when a third party subjectively believes an agent has authority to act

for the principal and that subjective belief is objectively reasonable). BANA, as the third party here, subjectively believed it could protect its DOT by arranging payment through A&K. Because A&K held itself out as HOA's agent and stated so in the foreclosure notices, the Court finds BANA's belief was objectively reasonable.

### 5. Collusion

Next, BANA asserts that A&K and SFR conspired to sell the Property without HOA's approval. (BANA's MSJ 21:10–17). BANA points to an email from SFR to A&K stating that SFR is "interested in immediately purchasing the reverted properties," and "I have been told that if SFR pays the HOA's full amount they are owed, the board approval may not be required." (*See* Email Chain, Ex. O to BANA's MSJ, ECF No. 63-15). BANA also cites to HOA's 30(b)(6) designee who testified that HOA was not aware of the sale to SFR. (*See* HOA's 30(b)(6) Dep. 35:3–36:23).

This evidence does not assist BANA as this transaction concerns the Property's sale to SFR *following* the sale that extinguished BANA's DOT—the reversion of the Property back to HOA following the publicly noticed September 5, 2012 sale. A&K and SFR's alleged conspiracy after September 5, 2012, is of no impact on the reasonableness of the sale that wiped out BANA's DOT.

### 6. Legal Uncertainty

Last, BANA argues that the legally uncertain nature of Nevada foreclosure law during the relevant time period justifies setting the sale aside on equitable grounds. (BANA's MSJ 21:18–22:10). According to BANA, Nevada law was unclear as to whether an HOA's lien may extinguish a deed of trust non-judicially and if HOA's could properly protect deeds of trust through their CC&Rs. (*Id.* 21:18–27).

The Nevada Supreme Court, however, has rejected the contention that, during the time period relevant to this action, Nevada law was "unsettled" as to the "the payment required to

satisfy the superpriority portion of an HOA lien." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 118 (Nev. 2018) (en banc) ("[A] plain reading of NRS 116.3116 indicates that at the time of Bank of America's tender, tender of the superpriority amount by the first deed of trust holder was sufficient to satisfy that portion of the lien."). The Court also applies this reasoning to BANA's argument concerning HOA's mortgagee protection clause, which is defeated by a plain reading of NRS Chapter 116. *See SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 419 (Nev. 2014) ("NRS 116.1104 defeats this argument. It states that Chapter 116's 'provisions may not be varied by agreement, and rights conferred by it may not be waived'").

In summary, BANA has failed to demonstrate it tendered the superpriority portion of HOA's lien or come forward with evidence of fraud, oppression, or unfairness sufficient to equitably set aside the sale. Accordingly, BANA's Motion for Partial Summary Judgment is denied.

### E. SFR's Quiet Title Claims

Because the Court finds the foreclosure proceedings complied with NRS Chapter 116, the sale caused the extinguishment of BANA's DOT. SFR, as subsequent purchaser of the Property, is accordingly entitled to summary judgment on its quiet title claim against BANA.

SFR also moves for summary judgment against Borrower on its quiet title claim. (SFR's MSJ 24:15–21). As discussed above, HOA and SFR have demonstrated that the foreclosure sale was validly conducted. Further, SFR has adduced evidence of its superior interest in the Property relative to that of Borrower including the statutorily required foreclosure notices, the notice of foreclosure deed, and the quitclaim deed. (*See* Notice of Lien, Ex. B to BANA's MSJ, ECF No. 63-2); (Notice of Default, Ex. C to BANA's MSJ, ECF No. 63-3); (Notices of Sale, Exs. D, E to BANA's MSJ, ECF Nos. 63-4, 63-5); (Quitclaim Deed, Ex. G to BANA's MSJ,

ECF No. 63-7). Therefore, the Court grants SFR's Motion as to Borrower to the extent Borrower claims an adverse interest in the Property.[2]

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that BANA's Motion for Partial Summary Judgment, (ECF No. 63), is **DENIED**.

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 66), is **GRANTED** consistent with the foregoing.

**IT IS FURTHER ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 64), is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report within fourteen (14) days of this Order identifying any non-moot claims that remain. In the event the parties fail to file a status report, the Court will dismiss any non-moot claims with prejudice and close the case.

**DATED** this __14__ day of February, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

---

[2] As Borrower has not appeared in this action, SFR has moved for clerk's entry of default, (ECF No. 65), which the clerk subsequently entered on June 5, 2018, (ECF No. 67).